UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GS LABS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No. 24-cv-08749-AMO<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE**<br><br>Re: Dkt. Nos. 40, 43, 44, 45, 56 |

Plaintiff GS Labs, LLC, brings this case alleging Defendants Cigna Health and Life Insurance Company and Cigna General Life Insurance Company engaged in civil racketeering activities by, among other things, failing to pay GS Labs for qualified COVID-19 diagnostic testing. Further, GS Labs names an additional six defendants as liable under an agency theory, since they utilized Cigna's third-party administrator services to process insurance claims. The parties refer to these six defendants as "Administrative-Services-Only" self-funded health benefit plans or "Cigna ASO Plans," which include: 1) Workday, Inc. Health and Welfare Benefits Plan ("Workday"); 2) Visa, Inc. Welfare Benefits and Cafeteria Plan ("Visa"); 3) Nvidia Welfare Plan ("Nvidia"); 4) Electronic Arts Benefit Plan ("Electronic Arts"); 5) Oportun Health & Welfare Benefits Plan ("Oportun"); and 6) Databricks, Inc. Health and Welfare ("Databricks"). On May 7, 2025, GS Labs voluntarily dismissed its claims against Oportun. (ECF 38.) Before the Court is the Cigna Defendants' motion to dismiss the Complaint for lack of personal jurisdiction, improper venue, and in the alternative, move to transfer the case to the District of Connecticut pursuant to 28 U.S.C. § 1404. Defendants Nvidia, Visa, Electronic Arts, and Databricks join this motion. (*See* ECF 44, 45, 56.) Defendant Workday separately moves to dismiss under Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) for improper venue and failure to state a claim. (ECF 43.)

Having reviewed the parties' submissions, and with the benefit of oral argument on October 28, 2025, the Court **GRANTS** Defendants' motion to transfer. Without reaching the parties' arguments on personal jurisdiction or the merits, the Court determines it is in the interest of justice that the case be transferred to the District of Connecticut.

**BACKGROUND**

Typically, district courts look to affidavits or declarations supplied by the party seeking transfer to establish supporting facts. *See, e.g.*, *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1026 (N.D. Cal. 2020). Consequently, this section comprises the well-pleaded allegations from the Complaint, as well as facts supplied by the parties' declarations.

GS Labs is a Nebraska entity, with its principal place of business located in Omaha. (ECF 1 ¶ 32.) Both Cigna Defendants are Connecticut entities with their principal places of business in Connecticut, and both Defendants are licensed to offer insurance in California. (*Id*. ¶¶ 33-34.) The principal place of business for all five Cigna ASO Plans is California. (*Id*. ¶¶ 36-41.) The Complaint asserts Defendants are liable to GS Labs for "tens of millions of dollars' worth of reimbursements for at least 77,892 patient encounters." (*Id*. ¶ 31 n.2.)

GS Labs notes it supplied a spreadsheet of the disputed patient encounters to Cigna, which included the patient's name, date of service, CPT codes, billed charges, paid amount, and owed amount, among other fields. (*Id*.) The declaration of Kevin P. Daly in support of Cigna's motion to dismiss or transfer venue includes further details from this spreadsheet. (ECF 40-1.) Per the Daly Declaration, the GS Labs Claims Spreadsheet contains 205,442 COVID testing claims amounting to $40,868,949.33 in disputed charges. (*Id*. ¶ 5.) The spreadsheet also provides the location where the testing took place, which includes the following states: Arizona, Colorado, Connecticut, Florida, Iowa, Illinois, Indiana, Kansas, Massachusetts, Michigan, Minnesota, Missouri, North Dakota, Nebraska, New Jersey, Ohio, Oregon, Pennsylvania, South Dakota, Utah, and Washington. (*Id*. ¶ 6.) None of the claims referenced in the spreadsheet involved testing in California. (*Id*.) Of these locations, the highest concentrations of claims occurred based on testing in Montana and Washington, which involved 30.66% and 23.95% of the total claims, respectively. (*Id*.)

2

1  Though the exact number of Cigna ASO Plans involved in these claims is unclear, the
2  Daly Declaration estimates the number to be in the thousands. (*Id.* ¶ 13.) Of those thousands of
3  Plans, the five Defendant ASO Plans account for approximately 0.71% of the disputed
4  $40,868,949.33. (*Id.* ¶ 15.)

5  Cigna also supplies the declaration of Senior Paralegal Supervisor, Pamela D. Ley, in
6  support of its motion. (ECF 40-2.) The Ley Declaration states Cigna operates a "substantially
7  automated" claims processing system for ASO Plans, such as those named in this suit. (*Id.* ¶¶ 7-
8  11.) Claims requests were processed in Connecticut, and payment was issued to GS Labs in
9  Nebraska. (*Id.* ¶¶ 12-14.) Relating to the nine schemes alleged by GS Labs, the Ley Declaration
10 confirms "Cigna's COVID-19 reimbursement policies and communications concerning Cigna's
11 COVID-19 reimbursement policies were developed in Bloomfield, Connecticut." (*Id.* ¶ 16.)

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[T]he purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). It is within the district court's discretion to transfer a case based on an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quotation omitted). In conducting this analysis, the Ninth Circuit has enumerated a list of eight non-exhaustive factors to consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99. Ultimately, "[t]he moving party must make a 'strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum' by showing private factors relating to 'the

3

1    convenience of parties and witnesses' and public factors relating to 'the interest of justice' warrant

2    transfer."  *Layfield v. Unum Life Ins. Co. of Am.*, No. 24-CV-03616-AMO, 2025 WL 1359219, at

3    *1 (N.D. Cal. May 9, 2025) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d

4    834, 843 (9th Cir. 1986)).

**DISCUSSION**

6    To permit transfer under 28 U.S.C. § 1404(a), the Court must first establish the instant case

7    "might have been brought" in the District of Connecticut.  *See Van Dusen*, 376 U.S. at 616.  The

8    Cigna ASO Plans have notified Cigna in writing that they will consent to personal jurisdiction

9    over them in Connecticut for the purposes of this action.  (ECF 40-1 ¶ 16.)  Further, for purposes

10   of venue, an entity-defendant resides "in any judicial district in which such defendant is subject to

11   the court's personal jurisdiction with respect to the civil action in question."

12   28 U.S.C. § 1391(c)(2).  Therefore, the Court determines personal jurisdiction and venue would be

13   proper for all Defendants in the District of Connecticut.

14   Turning to the private and public factors affecting transfer, the Court identifies three

15   primary considerations relevant here: 1) Plaintiff's choice of forum; 2) the convenience for the

16   parties and witnesses, including the parties' contacts with the forum and availability of evidence;

17   and 3) local interests in resolving local disputes.  The Court addresses each in turn.

**I.    PLAINTIFF'S CHOICE OF FORUM**

19   Ordinarily, "[t]he defendant must make a strong showing of inconvenience to warrant

20   upsetting the plaintiff's choice of forum."  *Decker Coal Co.*, 805 F.2d at 843.  However, the

21   plaintiff's choice "is not the final word."  *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954

22   (9th Cir. 1968).  "If the operative facts have not occurred within the forum of original selection

23   and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is

24   entitled only to minimal consideration."  *Id*.  Moreover, various district courts recognize that

25   indications of forum-shopping by the plaintiff further reduce the deference given to plaintiffs'

26   choice of forum.  *See, e.g.*, *Layfield v. Unum Life Ins. Co. of Am.*, No. 24-CV-03616-AMO, 2025

27   WL 1359219, at *2 (N.D. Cal. May 9, 2025); *Chen v. Pioneer Oil, LLC*, 472 F. Supp. 3d 704, 710

28   (N.D. Cal. 2020); *see also* 15 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3848 (4th

4

1    ed. 2025) ("And some courts give less weight to a plaintiff's forum choice if that party appears to

2    be forum shopping or seeking a safe haven from the lawful orders of another court.").

3          Here, GS Labs' choice of forum is not accorded significant deference.  GS Labs's principal

4    place of business is Omaha, Nebraska.  (ECF 1 ¶ 32.)  Cigna's principal place of business is

5    Connecticut.  (*Id*. ¶¶ 33-34.)  Of the 205,442 COVID testing claims amounting to $40,868,949.33

6    in disputed charges, none involved testing that took place in California.  (ECF 40-1 ¶ 6.)  Of the

7    thousands of Cigna ASO Plans involved in these disputed claims, GS Labs has chosen six to name

8    as defendants, all of whom are located in California.  (*Id*. ¶ 13.)  Those six Cigna ASO Plans

9    account for only 0.71% of the total value of the disputed claims.  (*Id*. ¶ 15.)  Indeed, GS Labs

10   notes that because of its "widely dispersed" operations, "no obvious venue presented itself."  (ECF

11   58 at 25.)  The basis for its forum selection was "the existence of a significant number of Cigna

12   ASOs" in California, and that California residents received some of the COVID tests in dispute.

13   (*Id*.)  Based on the current record, the Court determines six Cigna ASO Plans out of thousands

14   does not constitute a significant number, and the sliver of disputed claims from these California

15   entities does not create a "particular interest in the parties or the subject matter" here in the

16   Northern District of California.  *Pac. Car & Foundry Co.*, 403 F.2d at 954.  Accordingly, GS

17   Labs' choice of forum does not weigh against transfer.

18   **II.    CONVENIENCE TO THE PARTIES & WITNESSES**

19         The eight *Jones* factors include various considerations relating to convenience, such as

20   ease of access to sources of proof and the parties' relevant contacts with the forum.  *See Jones*,

21   211 F.3d at 498-99.  Here, these considerations tip decisively in favor of transfer.

22         To start, the District of Connecticut creates no greater inconvenience to GS Labs as it is

23   nearly the same distance from Nebraska as California.  For the Cigna Defendants, Connecticut is

24   clearly the more convenient forum as it is their principal place of business and where nearly 3,600

25   of their employees are headquartered.  (ECF 40-2 ¶ 6.)  Though GS Labs argues the California

26   Cigna ASO Plans would be inconvenienced by transfer (ECF 58 at 28), those parties have

27   consented to personal jurisdiction in Connecticut (ECF 40-1 ¶ 16).  So, any inconvenience to GS

28   Labs is neutral between fora, and convenience for the defendants weighs in favor of transfer.

Additionally, GS Labs' civil RICO theory relies principally on allegations regarding Cigna's conduct in Connecticut. Underlying the Complaint's nine alleged schemes are Cigna's claims administration communications and policies. Per the unrebutted Ley Declaration, the transactions and communications related to the 205,442 disputed claims originated in either Nebraska or Connecticut, and Cigna's policies and communications regarding their COVID-19 testing reimbursement procedures were formulated in Connecticut. (ECF 40-2 ¶¶ 12, 15-17.) GS Labs has not alleged the California-based Cigna ASO Plans were involved in developing these policies or adjudicating these claims. Rather, GS Labs alleges the Cigna ASO Plans are liable for Cigna's fraud and negligent misrepresentations since Cigna acted as the Plans' agent in claims administration. (ECF 1 ¶¶ 334, 338, 340.) Therefore, the only connection between the dispute and the Northern District of California is the location of the Cigna ASO Plans, who play little role in the substance of the alleged civil RICO schemes. Accordingly, this factor also weighs in favor of transfer.

Finally, the availability of witnesses similarly favors transfer to the District of Connecticut. Some district courts have held "[t]he paramount consideration in determining whether to transfer venue [to be] convenience to material witnesses." *Chen*, 472 F. Supp. 3d at 711 (quoting *Wilson Daniels, Ltd. v. Decanter Imports, Inc.*, No. 93-cv-1635-SAW, 1993 WL 361694, at *2 (N.D. Cal. Sept. 2, 1993)). Here, the factor bears significant weight as nearly all the material witnesses are likely located in either Connecticut or Nebraska, the sites where the COVID-19 testing reimbursement policies were created and disputed. The only California witnesses would come from the Cigna ASO Plans regarding their vicarious liability for Cigna's alleged fraud. And any inconvenience to those witnesses has been mitigated by the Cigna ASO Plans' consent to personal jurisdiction in Connecticut. Looking to both the allegations of the Complaint and Defendants' declarations, it becomes clear that the crux of this dispute lies outside the Northern District of California.

In opposition, GS Labs relies almost exclusively on *Ridenour v. Cigna Health & Life Ins. Co.*, No. 3:15-CV-03051-LB, 2015 WL 6674662 (N.D. Cal. Nov. 2, 2015), to support its position. In *Ridenour*, the court denied a motion to transfer an ERISA case, even though the plaintiff

6

1  resided in Virginia. *Id* at *6. There, the connection to the forum was based on two factual
2  allegations: first, the plaintiff worked for a law firm in the Bay Area, and second, the California
3  Department of Insurance had conducted multiple investigations into Cigna's refusal to reimburse
4  the plaintiff for authorized medical expenses. *Id*. at *2. In denying the motion, the court
5  determined there was slight deference to the plaintiff's choice of forum, and there was a local
6  interest in the litigation since the California Department of Insurance had conducted various
7  investigations into the matter. *Id*. at *7-*8.

8  However, *Ridenour* is distinguishable on various grounds. To start, many of the factors
9  weighing in favor of transfer here were neutral under the facts of *Ridenour*. For instance, in
10 *Ridenour*, witnesses resided in both California and Virginia such that either forum posed some
11 degree of inconvenience. *Id*. at *6. Here, the opposite is true—very few witnesses reside in
12 California while the lion's share resides in either Nebraska or Connecticut. Further, the *Ridenour*
13 plaintiff worked in California and his health insurance claims were investigated by the California
14 Department of Insurance. *Id*. GS Labs has no similar connection to California beyond identifying
15 six local Cigna ASO Plans out of the thousands referenced in GS Labs' Claims Spreadsheet.
16 Lastly, the defendant in *Ridenour* was not headquartered in either prospective forum, and had little
17 claim to inconvenience. *Id*. at *5. This differs from the instant case, where the parties would
18 benefit from the close proximity to relevant witnesses in Connecticut and Cigna's base of
19 operations located there.

20 As the *Ridenour* court noted, the issue was "a close one." *Id*. at *1. Such is not the case
21 here, as the balance leans decisively in favor of transfer.

22 **III.   LOCAL INTERESTS**

23 When considering public interest factors bearing on transfer, the court typically looks to:
24 "the administrative difficulties flowing from court congestion; the 'local interest in having
25 localized controversies decided at home'; the interest in having the trial of a diversity case in a
26 forum that is at home with the law that must govern the action; the avoidance of unnecessary
27 problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening
28 citizens in an unrelated forum with jury duty." *Decker Coal Co.*, 805 F.2d at 843. Of these

7

factors, the most salient here is the local interest in resolving local controversies.

As the Court discussed, *supra*, the operative facts in this dispute did not occur in California. In fact, none of the disputed COVID-19 tests were administered in California. (ECF 40-1 ¶ 6.) The slim connection to this forum is the six Cigna ASO Plan Defendants, selected by GS Labs from among thousands of potential ASO defendants. California has little local interest in resolving controversies where less than 0.71% of the disputed value involves California entities. Conversely, Connecticut has a significant interest in resolving controversies when the operative facts of the dispute occurred in its forum. *See, e.g.*, *Ctr. for Biological Diversity v. McCarthy*, No. 14-cv-05138 WHO, 2015 WL 1535594, at *5 (N.D. Cal. April 6, 2015). Moreover, Cigna is headquartered in Connecticut and employs thousands of its citizens there, further buttressing its local interest. *See Yuen v. IDEXX Lab'ys, Inc.*, No. 22-CV-04297-TLT, 2022 WL 22894430, at *4–5 (N.D. Cal. Nov. 14, 2022). On this record, the relevant public interest factors weigh in favor of transfer.

## CONCLUSION

For the reasons stated above, Defendants' motion to transfer to the District of Connecticut is **GRANTED**. Defendant Workday's 12(b)(6) motion is **DENIED AS MOOT**, without prejudice to raising these arguments upon transfer.

This Order disposes of Docket Nos. 40, 43, 44, 45, and 56.

**IT IS SO ORDERED.**

Dated: October 29, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**